**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **NICHOLAS EDWARDS,** | : | **CIVIL ACTION NO. 1:23-CV-156** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **J. RIVELLO, A. WAKEFIELD,** | : | |
| **N. DAVIS, KERI MOORE, GEORGE** | : | |
| **M. LITTLE,** | : | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM

Plaintiff Nicholas Edwards ("Edwards") commenced this action pursuant to 42 U.S.C. § 1983.  (Doc. 1).  The matter is proceeding via an amended complaint (Doc. 38), wherein Edwards alleges that the medical care and conditions at the State Correctional Institution at Huntingdon ("SCI-Huntingdon") violate his rights under federal and state law, and the Americans with Disabilities Act ("ADA").  Named as defendants are warden Rivello, facility grievance coordinator Wakefield, medical department supervisor Davis, chief grievance officer Moore, and secretary Little.  Before the court is defendants' Rule 12(b) motion (Doc. 40) to dismiss.  For the reasons set forth below, the motion will be granted in part and denied in part.

## I.   Factual Background & Procedural History

In the amended complaint, Edwards lodges claims based on the conditions of confinement at SCI-Huntingdon and the response to his medical needs.  (Doc. 38).  Edwards is housed on the BA block at SCI-Huntingdon.  (Id. ¶ 13).  He alleges that the cell block is infested with vermin, there is poor ventilation, extreme heat and

excessive noise, contaminated drinking water, inadequate plumbing, asbestos, mold, odors, dust, unclean bathrooms, and cold food.  (Id. ¶¶ 13-14, 23-24, 31, 35, 62). He also asserts there is inadequate ventilation in the showers that causes odors, heat and humidity, and there are nude inmates in the shower room.  (Id. ¶ 61). Edwards further alleges that he was exposed to secondhand smoke and the main kitchen has inadequate equipment, such as a leaking dishwasher.  (Id. ¶¶ 20, 63). He claims that defendants were aware of, but failed to address, these conditions. (Id. ¶¶ 15, 68).

As a result of his exposure to these conditions, Edwards allegedly experienced difficulty breathing, trouble sleeping, back pain, decreased energy, stress, depression, chest pain, coughing, watery and dry eyes, headaches, allergic reactions, dysentery, and a nosebleed.  (Id. ¶¶ 27-28, 31, 33, 35-36, 552).  In addition, Edwards claims he is receiving inadequate medical care because defendants discontinued one of his two asthma inhalers.  (Id. at ¶ 29).

Defendants move to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Doc. 40).  The motion is fully briefed and ripe for resolution.

## II.   <u>Legal Standard</u>

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6).  When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all [factual] allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most

favorable to the plaintiff." Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007)

(quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)).  Although the court is

generally limited in its review to the facts contained in the complaint, it "may also

consider matters of public record, orders, exhibits attached to the complaint and

items appearing in the record of the case."  Oshiver v. Levin, Fishbein, Sedran &

Berman, 38 F.3d 1380, 1384 n. 2 (3d Cir. 1994); see also In re Burlington Coat

Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice and pleading rules require the complaint to provide "the

defendant notice of what the . . . claim is and the grounds upon which it rests."

Phillips v. Cty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (quoting Bell Atl. Corp.

v. Twombly, 550 U.S. 544, 555 (2007)).  To test the sufficiency of the complaint in the

face of a Rule 12(b)(6) motion, the court must conduct a three-step inquiry.  See

Santiago v. Warminster Twp., 629 F.3d 121, 130-31 (3d Cir. 2010).  In the first step,

"the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'"

Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)).  Next, the factual and legal

elements of a claim should be separated; well-pleaded facts must be accepted as

true, while mere legal conclusions may be disregarded.  Id.; see also Fowler v.

UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).  Once the well-pleaded factual

allegations have been isolated, the court must determine whether they are sufficient

to show a "plausible claim for relief."  Iqbal, 556 U.S. at 679 (citing Twombly, 550

U.S. at 556); Twombly, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient

to "raise a right to relief above the speculative level").  A claim "has facial

3

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

**III.**   **Discussion**

   **A.**   **State Law Claim**

Edwards raises the state tort claim of negligence against defendants. Specifically, he alleges that he was subjected to "negligence acts by all defendant[]s" due to the conditions of SCI-Huntingdon.  (Doc. 38 ¶ 78).  Defendants argue that Edwards' state law claim must be dismissed because they are immune from suit pursuant to the Eleventh Amendment or because the state law claim is barred by the doctrine of sovereign immunity.  (Doc. 31 at 4-6).  We will address each argument in turn.

   **1.**   ***Eleventh Amendment Immunity***

Defendants first seek dismissal of Edwards' state law claim against them in their official capacities.  (Doc. 41 at 4-5).  The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. CONST. amend. XI.  The Eleventh Amendment bars suits seeking monetary damages against a state and its agencies in federal court.  See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 99-100 (1984).  There is no exception to Eleventh Amendment immunity for plaintiffs who bring state law claims against a state.  See

4

id. at 106 (recognizing that Eleventh Amendment immunity applies to state law claims in addition to federal claims).

Suits against state officials acting in their official capacities are really suits against the employing government agency, in this case the Pennsylvania Department of Corrections ("DOC"), and, as such, are barred by the Eleventh Amendment.  A.W. v. Jersey City Public Schools, 341 F.3d 234, 238 (3d Cir. 2003); see also Hafer v. Melo, 502 U.S. 21, 25 (1991); Will v. Mich. Dep't of State Police, 491 U.S. 58, 70-71 (1989).  As the Commonwealth has not waived its Eleventh Amendment immunity for lawsuits filed in federal court, see 42 PA. CONS. STAT. §§ 8521-22, it and its departments, as well as its officials sued in their official capacities, are immune from suits filed in federal court.  Defendants' motion to dismiss any claim for monetary relief against them in their official capacities will be granted.

Conversely, to the extent defendants seek to dismiss Edwards' request for prospective declaratory or injunctive relief (see Doc. 38 at 13), based on the Eleventh Amendment, the motion will be denied.  The Eleventh Amendment does not generally bar prospective declaratory or injunctive relief.  See Kentucky v. Graham, 473 U.S. 159, 167 (1985) (explaining that "official-capacity actions for prospective relief are not treated as actions against the State"); see also Edelman v. Jordan, 415 U.S. 651, 677 (1974) (holding that "a federal court's remedial power, consistent with the Eleventh Amendment, is necessarily limited to prospective injunctive relief.").  However, because we find that the state law tort claim is plainly

5

barred by the doctrine of sovereign immunity, the negligence claim will be dismissed.

### 2.    *Sovereign Immunity*

Defendants next seek dismissal of Edwards' state law claim of negligence, arguing that the doctrine of sovereign immunity bars this claim against state employees.  We agree.  It is beyond dispute that, "[t]he Department of Corrections is an agency of the Commonwealth and the defendants, as employees of an agency of the Commonwealth, are entitled to the protection afforded by sovereign immunity." McGrath v. Johnson, 67 F.Supp.2d 499, 511 (E.D. Pa. 1999) (citing Maute v. Frank, 441 Pa. Super. 401, 402, 657 A.2d 985, 986 (1995) (state prison officials enjoy sovereign immunity); Robles v. Pennsylvania Dep't of Corrections, 718 A.2d 882, 884 (Pa. Commw. Ct. 1998) (same)), aff'd, 35 F. App'x 357 (3d Cir. 2002).[1]  As a general matter, subject only to ten specific statutory exceptions not applicable here, this sovereign immunity bars state law tort claims like the one alleged here, since Commonwealth employees are immune from liability for negligence.[2]  McGrath, 67

---

[1]  The court acknowledges that nonprecedential decisions are not binding upon federal district courts.  Citations to nonprecedential decisions reflect that the court has carefully considered and is persuaded by the panel's *ratio decidendi*.

[2]  The Commonwealth of Pennsylvania has explicitly retained its sovereign immunity and not waived it, except in ten carefully defined and limited circumstances: (1) vehicle liability; (2) medical-professional liability; (3) care, custody or control of personal property; (4) Commonwealth real estate, highway and sidewalks; (5) potholes and other dangerous conditions; (6) care, custody or control of animals; (7) liquor store sales; (8) National Guard activities; (9) toxoids and vaccines; and (10) sexual abuse.  42 PA. CONS. STAT. § 8522(b).

F.Supp.2d at 511, aff'd, 35 F. App'x 357 (3d Cir. 2002).  We will dismiss Edwards'

state law negligence claim.

**B.     Claims Pursuant to 42 U.S.C. § 1983**

Section 1983 of Title 42 of the United States Code offers private citizens a

cause of action for violations of federal law by state officials.  See 42 U.S.C. § 1983.

The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation,
> custom, or usage, of any State or Territory or the District of Columbia,
> subjects, or causes to be subjected, any citizen of the United States or
> other person within the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the Constitution and laws,
> shall be liable to the party injured in an action at law, suit in equity, or
> other proper proceeding for redress...

Id.; see also Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95

F.3d 1199, 1204 (3d Cir. 1996).  To state a claim under § 1983, a plaintiff must allege

"the violation of a right secured by the Constitution and laws of the United States,

and must show that the alleged deprivation was committed by a person acting

under color of state law."  West v. Atkins, 487 U.S. 42, 48 (1988).

Defendants assert that they are entitled to dismissal in relation to the § 1983

claims because they were not personally involved in the alleged violations of

Edwards' constitutional rights.  (Doc. 41 at 6-7)  They maintain further that they are

entitled to dismissal because Edwards is not incarcerated under conditions posing a

substantial risk of serious harm, they did not demonstrate deliberate indifference to

that risk, and Edwards did not adequately plead an inadequate medical care claim.

(Id. at 8-11; see also id. at 8 n.3).  We consider each argument in turn below.

1.      ***Claims against Rivello, Wakefield, Davis, Moore, and Little***

Individual liability can be imposed under section 1983 only if the state actor played an "affirmative part" in the alleged misconduct and "cannot be predicated solely on the operation of *respondeat superior*."  Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1998)).  "A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . .  Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence."  Rode, 845 F.2d at 1207-08; see also Rizzo v. Goode, 423 U.S. 362 (1976); Atkinson v. Taylor, 316 F.3d 257 (3d Cir. 2003).  Such allegations, however, must be made with appropriate particularity in that a complaint must allege the particulars of conduct, time, place, and person responsible.  Evancho, 423 F.3d at 354; Rode, 845 F.2d at 1207-08.  Alleging a mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement. Rode, 845 F.2d at 1208.  A claim of a constitutional deprivation cannot be premised merely on the fact that the named defendant was the prison warden, or a prison supervisor, when the incidents set forth in the complaint occurred.  Id. at 1207.

Supervisors "may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."  Iqbal, 556 U.S. at 676. Supervisory liability will attach when the supervisor: (1) establishes and maintains a policy causing constitutional harm, or (2) participates in the violation of rights, directs others to violate them, or as person in charge, knows of and acquiesces in

the subordinates' violation.  <u>Santiago v. Warminster Twp.</u>, 629 F.3d 121, 129 n.5 (3d Cir. 2010).  A supervisory liability claim "necessarily includes as an element an actual violation at the hands of subordinates or employees."  <u>Id.</u> at 130.

Considering the allegations of the amended complaint, Edwards does offer some allegations beyond a blanket invocation of vicarious liability.  He alleges that all defendants "participated directly in the alleged constitutional violation" because they received request slips, sick calls, reports, and grievance appeals, yet failed to cure the alleged wrongs.  (Doc. 38 ¶ 15).  He alleges that warden Rivello oversees the inmates at SCI-Huntingdon and knew of, and saw, the conditions of the facility on a daily basis, (<u>id.</u> ¶¶ 5, 41, 55); that defendant Wakefield is the facility grievance coordinator and is responsible for implementing Department Policy 804 ("DC-ADM 804"), (<u>id.</u> ¶ 6); that defendant Moore, in her capacity as the chief grievance officer, also has the responsibility of implementing DC-ADM 804, (<u>id.</u> ¶ 8); that defendant Davis is the medical department supervisor and is tasked with providing medical care to all inmates pursuant to Department Policy 820, (<u>id.</u> ¶¶ 7, 42); and that defendant Little, as the secretary of the DOC, creates policies and customs within the DOC (<u>id.</u> ¶ 9).  These allegations suffice to establish some level of personal involvement by the defendants, in their capacities as policymakers and supervisors, in the asserted constitutional violations.  Therefore, we decline to grant defendants' motion to dismiss based purely on lack of personal involvement and will proceed to address the merits of the claims below.

However, to the extent that Edwards attempts to hold any of the defendants liable based on their involvement in the grievance procedure, this claim fails. Edwards alleges that defendant Wakefield denied his grievance and defendant Rivello rejected his grievance appeal. (Doc. 38 ¶¶ 38, 67). The law is clear that a prison official's involvement in the grievance process is insufficient for § 1983 liability to attach. See Pressley v. Beard, 266 F. App'x 216, 218 (3d Cir. 2008) (district court properly dismissed defendants who were sued based on their failure to take corrective action when grievances or investigations were referred to them). Likewise, to the extent that Edwards' claims express dissatisfaction with the grievance procedure itself, this claim must be dismissed because inmates do not have a "free-standing constitutional right to an effective grievance process." Woods v. First Corr. Medical, Inc., 446 F. App'x 400, 403 (3d Cir. 2011) (citation omitted). Defendants are entitled to dismissal of any claims against them pertaining to their involvement in the grievance procedure.

### 2. Conditions of Confinement Claim

The Eighth Amendment's prohibition of cruel and unusual punishment imposes duties on prison officials to provide prisoners with the basic necessities of life, such as food, clothing, shelter, sanitation, medical care, and personal safety. See Farmer v. Brennan, 511 U.S. 825, 832 (1994); Helling v. McKinney, 509 U.S. 25, 31 (1993). To show that conditions of confinement violate the Eighth Amendment, a plaintiff bears the burden of proving two requirements: "(1) the deprivation alleged must be, objectively, 'sufficiently serious,'" resulting in the "denial of 'the minimal

10

civilized measure of life's necessities,'" and "(2) the 'prison official must have a sufficiently culpable state of mind.'" Thomas v. Tice, 948 F.3d 133, 138 (3d Cir. 2020) (quoting Farmer, 511 U.S. at 834; Wilson v. Seiter, 501 U.S. 294, 299, 302-303 (1991) (cleaned up)); McClure v. Haste, 820 F. App'x 125, 128 (3d Cir. 2020). Only "extreme deprivations" are sufficient to present a claim for unconstitutional conditions of confinement. Fantone v. Herbik, 528 F. App'x 123, 127 (3d Cir. 2013) (quoting Hudson v. McMillian, 503 U.S. 1, 8-9 (1992)).

To satisfy the first requirement, Edwards "must show that he is incarcerated under conditions posing a substantial risk of serious harm," but he need not show actual injury. Porter v. Pa. Dep't of Corr., 974 F.3d 431, 441 (3d Cir. 2020) (quoting Mammana v. Fed. Bureau of Prisons, 934 F.3d 368, 373 (3d Cir. 2019) (internal quotations omitted)). "The proof necessary to show that there was a substantial risk of harm is less demanding than the proof needed to show that there was a probable risk of harm." Id. (quoting Chavarriaga v. N.J. Dep't of Corr., 806 F.3d 210, 227 (3d Cir. 2015)). "This is a totality-of-the circumstances analysis" and should consider the duration and severity of the unconstitutional conditions. McClure, 820 F. App'x at 128.

The allegations in support of this claim are centered around the conditions at SCI-Huntingdon. (Doc. 38 ¶¶ 13-14, 20, 23-24, 31, 35, 61-63). Edwards alleges that there is vermin, poor ventilation, extreme heat and excessive noise, contaminated drinking water, inadequate plumbing, asbestos, mold, odors, dust, unclean bathrooms, cold food, inadequate kitchen equipment, and exposure to secondhand

smoke.  (Id.)  Taking the allegations together, we find that Edwards has established the objective element of his claim, i.e., that the allegations rise to the level of conduct that may be deemed inhumane or resulted in the deprivation of the minimal civilized measures of the necessities of life.

As to the second requirement, Edwards must show "that the prison official 'knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.'"  Porter, 974 F.3d at 444 (citations omitted).  The second element is subjective, and the "prison official must both know of and disregard an excessive risk to inmate health and safety."  Mammana, 934 F.3d at 373.  "In other words, 'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'"  Id. (quoting Farmer, 511 U.S. at 837).  At this early stage, it is plausible that defendants Rivello, Wakefield, and Davis, who allegedly work at SCI-Huntingdon, have actual knowledge of the alleged longstanding sanitation issues at the facility.  The conditions of confinement claim will proceed against defendants Rivello, Wakefield, and Davis.

It is not plausible, however, that DOC secretary Little and DOC chief grievance officer Moore would have personal knowledge of the conditions at SCI-Huntingdon.  See, e.g., Dooley v. Wetzel, 957 F.3d 366, 374 (3d Cir. 2020) (holding that an inmate's allegation that the secretary of the DOC knew about his complaints through a copy of documents sent to the secretary "does not demonstrate the

personal direction or actual knowledge required under <u>Rode</u>").  We will dismiss the conditions of confinement claim as to defendants Little and Moore.

### 3.    *Deliberate Indifference to Medical Needs*

In order to establish an Eighth Amendment medical claim, a plaintiff "must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need."  <u>Natale v. Camden Cty. Correctional Facility</u>, 318 F.3d 575, 582 (3d Cir. 2003) (citing <u>Rouse v. Plantier</u>, 182 F.3d 192, 197 (3d Cir. 1999)).  A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would recognize the necessity for a doctor's attention."  <u>Monmouth Cty. Corr. Institutional Inmates v. Lanzaro</u>, 834 F.2d 326, 347 (3d Cir. 1987).  In addition, "if unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth amendment."  <u>Id.</u> (citation omitted).

A prison official acts with deliberate indifference to an inmate's serious medical needs when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  <u>Farmer</u>, 511 U.S. at 837.  A mere difference of opinion between the prison's medical staff and the inmate regarding the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment.  <u>See</u> <u>Farmer v. Carlson</u>, 685 F. Supp. 1335, 1339 (M.D. Pa. 1988); <u>see also</u> <u>McCracken v.</u>

Jones, 562 F.2d 22, 24 (10th Cir. 1977); Smart v. Villar, 547 F.2d 112, 113 (10th Cir.

1976), cert. denied, 450 U.S. 1041 (1981).  Moreover, "[i]f a prisoner is under the care

of medical experts…a non-medical prison official will generally be justified in

believing that the prisoner is in capable hands."  Spruill v. Gillis, 372 F.3d 218, 236

(3d Cir. 2004).  Accordingly, "absent a reason to believe (or actual knowledge) that

prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-

medical prison official…will not be chargeable with the Eighth Amendment scienter

requirement of deliberate indifference."  Id.

Assuming that Edwards' allegations qualify as a serious medical condition for

purposes of the Eighth Amendment analysis, the court must determine whether he

has established a deliberate indifference to that need.  In the amended complaint,

Edwards complains that defendants discontinued one of his two asthma inhalers.

(Doc. 38 ¶ 29; see also Doc. 43 at 5 (explaining that the inhaler was "den[ied]…for a

month")).  The decision to discontinue use of an inhaler, while continuing to

prescribe another, does not amount to deliberate indifference, but rather is "a

classic example of a matter for medical judgment" that "does not represent cruel

and unusual punishment."  Estelle v. Gamble, 429 U.S. 97, 107 (3d Cir. 1976).  Given

the considerable latitude afforded prison authorities in the treatment of prisoners, a

prison doctor's decision to prescribe one drug over another simply cannot give rise

to an Eighth Amendment claim.  See White v. Napoleon, 897 F.2d 103, 110 (3d Cir.

1990) (doctor's choice of one drug over another is not actionable); Spruill, 372 F.3d

at 235 (holding that "mere disagreement as to the proper medical treatment" is

insufficient to state a constitutional violation); <u>Gause v. Diguglielmo</u>, 339 F. App'x 132 (3d Cir. 2009) (dispute over choice of medication does not rise to the level of an Eighth Amendment violation).  Additionally, defendants Rivello, Wakefield, Moore, and Little are not medical personnel and cannot be considered deliberately indifferent "simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." <u>Durmer v. O'Carroll</u>, 991 F.2d 64, 69 (3d Cir. 1991).

Edwards fails to allege facts from which it can reasonably be inferred that defendants exhibited deliberate indifference to his medical needs.  Therefore, the court will dismiss the Eighth Amendment inadequate medical care claim.

### C.    Claim under the ADA

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132(1).  Individual defendants, however, are not public entities within the meaning of Title II of the ADA and, therefore, are not subject to suit.  <u>Emerson v. Thiel College</u>, 296 F.3d 184, 189 (3d Cir. 2002) (individuals are not subject to liability under "Titles I or II of the ADA, which prohibit discrimination by employers and public entities respectively."); <u>Kokinda v. Pennsylvania Dep't of Corr.</u>, 779 F. App'x 938, 942 (3d Cir. 2019) (nonprecedential) (concluding that plaintiff's "claims for individual damages liability under Title II of the ADA fail for the simple reason that there is no such

15

liability") (citations omitted).  Thus, Edwards cannot maintain his ADA claim against the defendants in their individual capacities.

To the extent Edwards is suing the defendants in their official capacities, the claim is viable as the Supreme Court has held that Title II of the ADA validly abrogates sovereign immunity as to state conduct that violates the Constitution. United States v. Georgia, 546 U.S. 151, 159 (2006); see also Durham v. Kelley, 82 F.4th 217, 224 (3d Cir. 2023) ("state officers *can* be sued for damages in their official capacities for purposes of the ADA…unless barred by the Eleventh Amendment") (emphasis in original).

In order to determine whether a plaintiff may sue a State for damages under Title II, courts must "(1) identify which aspects of the State's alleged conduct violated Title II; (2) identify to what extent such conduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, determine whether Congress' purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid." Bowers v. NCAA, 475 F.3d 524, 553 (3d Cir. 2007).  Pursuant to this standard, Edwards must initially state a valid claim under Title II of the ADA, and to do this he must demonstrate that: (1) he is a qualified individual; (2) with a disability; and (3) he was denied the opportunity to participate in or benefit from the services, programs, or activities of a public entity, or was otherwise subject to discrimination by that entity; (4) by reason of his disability.  Bowers, 475 F.3d at 553 n.32; 42 U.S.C. § 12132.

Defendants do not dispute that Edwards is a qualified individual with a disability. (See Doc. 41 at 12). Edwards appears to assert that he is being denied the following programs, activities, and/or services at SCI-Huntingdon: (1) not being provided a prison job; (2) not being able to attend a trade school; (3) not being able to use the weight room; and (4) not being able to participate in the medical monitoring program. (Doc. 38 ¶¶ 44, 50, 74).

First, Edwards' attempt to assert ADA liability due to what he deems to be inadequate medical treatment is foreclosed, as a claim of denial of medical treatment for his disabilities is not cognizable under the ADA. Iseley v. Beard, 200 F. App'x 137, 142 (3d Cir. 2006); see also Bryant v. Madigan, 84 F.3d 246, 249 (7th Cir. 1996) (holding that "the [ADA] would not be violated by a prison's simply failing to attend to the medical needs of its disabled prisoners").

Next, there is no question that Edwards' allegations that he was denied a prison job, denied participation in a trade school, and denied access to the weight room because of his disability are sufficient, at this stage in the proceedings, to state a claim for relief under Title II of the ADA. Edwards also states that he submitted a request for accommodation, but the request was denied. (Doc. 38 ¶ 50). In light of the myriad factual issues attendant to these allegations, this is an issue more appropriately addressed at the summary judgment stage. Therefore, Edwards'

claim for prospective injunctive relief and compensatory damages under Title II of the ADA may proceed against the defendants in their official capacities.[3]

### D.    Claim for Punitive and Compensatory Damages

Edwards seeks punitive and compensatory damages against all defendants "for civil rights violations of the Eighth Amendment of the United States Constitution of mental anguish, emotional and physical pain, negligence, and ADA violations." (Doc. 38 at 13).  Defendants argue that Edwards failed to state a plausible claim for punitive damages because he failed to allege reckless or callous indifference to his rights, or reprehensible conduct by any of the defendants.  (Doc. 41 at 13-15).  In addition, they contend that Edwards' injuries are not actual injuries for an award of compensatory damages.  (Id. at 14).

In Pennsylvania, punitive damages are available as a remedy for negligence actions where: "(1) a defendant had a subjective appreciation of the risk of harm to which the plaintiff was exposed and that (2) he acted, or failed to act, as the case may be, in conscious disregard of that risk." Hutchison ex rel. Hutchison v. Luddy, 582 Pa. 114, 870 A.2d 766, 772-73 (Pa. 2005).  This remedy is only available "in cases where the defendant's actions are so outrageous as to demonstrate willful, wanton or reckless conduct." Id. at 770.  As to compensatory damages, they are available for violations of § 1983 "to compensate persons for injuries caused by the deprivation of constitutional rights." Carey v. Piphus, 435 U.S. 247, 254 (1978).  An

---

[3] Punitive damages are not available under Title II of the ADA.  See Bowers, 346 F.3d at 429 (citing Barnes v. Gorman, 536 U.S. 181, 187 (2002)).

award of damages may not, however, be based on the "abstract value of a constitutional right." Memphis Cmty. Sch. Dist. v. Stachura, 477 U.S. 299, 308 (1986).  Rather, it must be based on evidence of an "actual injury" suffered by the plaintiff.  Carey, 435 U.S. at 264; see also Farrar v. Hobby, 506 U.S. 103, 112 (1992) ("[N]o compensatory damages may be awarded in a [Section] 1983 suit absent proof of actual injury.").

Considering the court's determination that allegations of recklessness will not be dismissed at this juncture, the court likewise declines to dismiss the punitive damages claim.  And, Edwards' purported injuries—difficulty breathing, trouble sleeping, back pain, decreased energy, stress, depression, chest pain, coughing, watery and dry eyes, headaches, allergic reactions, dysentery, and a nosebleed—are sufficient to plausibly state an actual injury for a compensatory damages award at this stage in the proceedings.  (See Doc. 38 ¶¶ 27-28, 31, 33, 35-36, 51-52).  It would be premature to delve into the factual determinations required for an award of punitive or compensatory damages at the motion to dismiss stage.  We will deny defendants' motion to dismiss the request for punitive and compensatory damages.

**IV.    Leave to Amend**

The Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile.  Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).  Further, "[a] district court has 'substantial leeway in deciding whether to grant leave to amend.'"  In re Avandia Mktg., Sales

<u>Practices & Products Liab. Litig.</u>, 564 F. App'x 672, 673 (3d Cir. 2014) (not precedential) (quoting <u>Lake v. Arnold</u>, 232 F.3d 360, 373 (3d Cir. 2000)).  It would be futile to permit Edwards leave to file a second amended complaint with respect to his state law claim, the claims relating to defendants' involvement in the grievance procedure, the conditions of confinement claim against defendants Little and Moore, the inadequate medical care claim, and the individual capacity ADA claim, as the allegations relating to these claims are factually and legally flawed.  Edwards "has already had two chances to tell his story" and has failed to remedy the deficiencies.  <u>Jones v. Unknown D.O.C. Bus Driver & Transp. Crew</u>, 944 F.3d 478, 483 (3d Cir. 2019).  Accordingly, "giving him further leave to amend would be futile."  <u>Id.</u>

## V.   <u>Conclusion</u>

For the reasons explained in this memorandum, defendants' motion (Doc. 40) to dismiss will be granted in part and denied in part.  The court will grant defendants' motion to dismiss the state law negligence claim, the claims relating to their involvement in the grievance procedure, the conditions of confinement claim against defendants Little and Moore, and the inadequate medical care claim.  The court will deny defendants' motion to dismiss the conditions of confinement claim against defendants Rivello, Wakefield, and Davis, and the request for punitive and compensatory damages.  Additionally, Edwards' individual capacity claim under Title II of the ADA will be dismissed.  However, Edwards' official capacity ADA claim against the defendants is not subject to dismissal.

An appropriate order shall issue.


/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:        December 5, 2023